UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| WAYMAN THOMAS, )<br>)<br>   Plaintiff )<br>)<br>   vs. )<br>)<br>STANLEY KNIGHT, )<br>)<br>   Defendant ) | CAUSE NO. 3:03-CV-862 RM |

OPINION and ORDER

Wayman Thomas has alleged in his complaint filed pursuant to 42 U.S.C. § 1983 that in 2003, while he was housed at the Miami Correctional Facility ("MCF") in Bunker Hill, Indiana, defendant Stanley Knight failed to protect him from attacks by other inmates. During the time period here at issue, Mr. Knight was acting superintendent at MCF. The court has jurisdiction under 28 U.S.C. § 1343.

Superintendent Knight seeks summary judgment on Mr. Thomas's claims against him. Although Mr. Thomas was unrepresented when he filed his complaint, he later obtained counsel, who filed a summary judgment response on Mr. Thomas's behalf. For the reasons that follow, the court grants Superintendent Knight's motion.

Summary judgment is appropriate when "the pleadings, depositions, answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). In deciding whether a genuine issue of material fact exists, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). No genuine issue of material fact exists when a rational trier of fact could not find for the nonmoving party even when the record as a whole is viewed in the light most favorable

to the nonmoving party. Ritchie v. Glidden Co., 242 F.3d 713, 720 (7th Cir. 2001). "The mere existence of an alleged factual dispute will not defeat a summary judgment motion; instead, the nonmovant must present definite, competent evidence in rebuttal." Butts v. Aurora Health Care, Inc., 387 F.3d 921, 924 (7th Cir. 2004). The party with the burden of proof on an issue must show that there is enough evidence to support a jury verdict in his favor. Lawrence v. Kenosha County, 391 F.3d 837, 842 (7th Cir. 2004); *see also* Johnson v. Cambridge Indus., Inc., 325 F.3d 892, 901 (7th Cir. 2003) ("As we have said before, summary judgment 'is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events.'" *(quoting* Schacht v. Wisconsin Dep't of Corr., 175 F.3d 497, 504 (7th Cir. 1999)).

Mr. Thomas's claims against Superintendent Knight relate to attacks Mr. Thomas suffered at MCF. Mr. Thomas reports that Correctional Officer James was harassing and threatening him in early 2003, so he complained to MCF officials and asked to be protected, separated from Officer James, and/or transferred to another institution. His initial complaint was submitted on March 10, 2003. Mr. Thomas claims prison officials took no action in the matter, and the harassment continued. He says he continued to pursue his grievance against Officer James to no avail, and on or about April 24 and October 19, 2003, he was attacked and injured by other inmates acting at the request of Officer James. Mr. Thomas maintains he filed his grievances via proper MCF grievance procedures, but Superintendent Knight failed to act on his complaints or to take steps necessary to protect him from the resulting attacks. Mr. Thomas seeks compensatory and punitive damages.

Superintendent Knight maintains Mr. Thomas's claims are barred because he didn't exhaust his administrative remedies before filing suit. Superintendent Knight has set forth the grievance procedures of the Indiana Department of Correction through the affidavit of Amy Clark, the Administrative Assistant/Grievance Specialist at MCF, who explains that:

2

>Since May 2000, the DOC's official procedures regarding grievances have provided, among other things, the "incident or process being grieved must have occurred with[in] forty-eight hours, excluding weekends and holidays, of the submission of the complaint form to the Grievance Specialist. The time frame does not apply to complaints against a specific written policy or procedure."
>These times limits can be extended but that must be done in writing.
>Since May 2000, the DOC's official procedures regarding grievances have also provided that the grievance process begins with a complaint (called "Step 1"); if an offender is not satisfied with the response to the complaint, he must appeal by filing a formal grievance ("Step 2"); if the offender is not satisfied by the Step 2 response, he may appeal to a Grievance Committee ("Step 3"); if the Step 3 response is not satisfactory, the offender may appeal to the Facility Head ("Step 4"); and if the Step 4 response from the Facility Head or designee is not satisfactory, the offender may appeal to the appropriate Regional Director or designee . . . .
>Since May 2000, the DOC's official procedures regarding grievances have also provided: "Appeals must address the basic issue of the initial grievance. They may contain additional facts or information regarding the original issue and may raise concerns regarding the response from the previous level. Appeals shall not raise new and/or unrelated issues."

Declaration of Amy Clark, ¶¶ 4-8.

Some matters are not grievable under DOC procedures, but offenders may submit grievances relating to danger from other offenders, an attack by another offender, or lack of protection from such danger by prison staff. Such a grievance triggers an investigation and, if appropriate, separation of the offender from those who threaten him, punishment of one who has harmed the offender, and sanctions for a staff member who knowingly failed to protect an offender from a known threat of danger. *See* Declaration of Amy Clark, ¶¶ 11-13

Superintendent Knight notes Mr. Thomas first mentioned being attacked by other inmates in his Step 5 grievance form, which he filed on November 19, 2003. Superintendent Knight maintains that under the grievance procedures that Ms. Clark described, Mr. Thomas would have had to have filed a grievance relating to the April 24 attack by April 29, but didn't do so; Mr. Thomas would have had to have filed a grievance relating to the October 19 attack by October 22, but didn't do so; alternatively, Mr. Thomas could have submitted written requests for extensions of time to file those grievances, but

3

didn't do so either. *See* Declaration of Amy Clark, ¶¶ 16-19. Superintendent Knight concludes that Mr. Thomas has forfeited his right to pursue his claim of failure to protect because he didn't exhaust his administrative remedies with respect to the attacks.

Mr. Thomas maintains he followed the applicable grievance procedures at MCF. He says he submitted the proper forms, in which he told prison officials about Officer James's harassment and informed them that statements made by Officer James to other inmates had put his life in jeopardy. He says those grievance forms included his request to be separated from Officer James and transferred to another facility for his own safety.

The grievance forms that Mr. Thomas submitted provide in relevant part as follows:

> Step 1 Complaint, dated March 10, 2003: "I am being harassed and stalked by CO James."
> Step 2 Grievance, dated May 19, 2003: "I filled out a step # 1 grievance on 3-10-03 because of CO James's actions towards me and her harassing behavior towards me! If you check into this and do your job you'll see everything I'm telling you is true. CO James has went to other inmates telling them I called her a race trading whore!"
> Step 3 Appeal to Grievance Committee, dated April 22, 2003: "I Wayman D. Thomas have had many problems with CO James . . . . I have talked to other officers and inmates . . . who said CO James tried to get them to shake me down and she told other black inmates that I was a racist and got me into a fight. I need to be moved from MCF A.S.A.P."
> Step 4 Appeal to Superintendent, dated May 30, 2003: "I Wayman D. Thomas have put in 3 prior grievances pertaining to ongoing conflict with CO James . . . CO James tried to [e]ntice [others] to harass me and shake me down! . . . CO James has put my life in jeopardy and I'm not safe at MCF."
> Step 5 Appeal to Regional Director, dated November 19, 2003: "CO James has caused me a lot of unwanted problems . . . . On 4-24-03 I had to protect myself due to this issue with CO James and on 10-19-03 I was taken to outside hospital with broken nose, eye, saccett [sic] and damage to m[y] eye. I need to be transferred!"

Exhs. to Pltf. Memo. Mr. Thomas maintains he exhausted all available administrative remedies and by doing so put Superintendent Knight on notice that he "feared for his life and had suffered beatings at the hands of another inmate or inmates." Pltf. Memo., at 3-4.

4

The Prison Litigation Reform Act of 1995 ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhausting administrative remedies requires a prisoner to follow the procedures of, and take all steps prescribed by, the prison's grievance system. Ford v. Johnson, 362 F.3d 395, 397 (7th Cir. 2004); *see also* Riccardo v. Rausch, 375 F.3d 521, 523-524 (7th Cir. 2004) ("Prisoners must follow state rules about the time and content of grievances. Failure to do this means failure to use (and thus to exhaust) available remedies."), *cert. denied,* 125 S. Ct. 1589 (2005).

Although Mr. Thomas pursued a grievance through MCF channels, in each step of the process, he complained of actions by Officer James. Mr. Thomas's only mention of attacks by other inmates was at the final step of the appellate process, a grievance filed almost seven months after the first attack and a month after the second. Mr. Thomas didn't file a grievance in April addressing the first attack, nor did he file a grievance in October addressing the second attack. Pursuant to official grievance procedures, set forth by the defendant and not challenged by Mr. Thomas, Mr. Thomas's mention of those attacks in his Step 5, November 19 grievance form was untimely. Mr. Thomas didn't properly exhaust his administrative remedies relating to the two attacks.

Mr. Thomas also claims Superintendent Knight failed to take the necessary steps to protect him and that Superintendent Knight's "deliberate disregard to a known risk resulted in a more serious attack . . . by other inmates." Pltf. Memo., at 3. The Eighth Amendment is violated by a prison official's deliberate indifference to "a substantial risk of serious harm to an inmate." Farmer v. Brennan, 511 U.S. 825, 828 (1994). Deliberate indifference is comparable to criminal recklessness, and is shown by "something approaching a total unconcern for [the plaintiff's] welfare in the face of serious risks, or a conscious, culpable refusal to prevent harm." Duane v. Lane, 959 F.2d 673, 677 (7th Cir. 1992). The

5

defendant "must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994); *see also* Armstrong v. Squadrito, 152 F.3d 564, 577 (7th Cir. 1998) ("the defendant must have known that the plaintiff was at serious risk of being harmed [and] decided not to do anything to prevent that harm from occurring even though he could have easily done so"). This total disregard for a prisoner's safety is the "functional equivalent of wanting harm to come to the prisoner." McGill v. Duckworth, 944 F.2d 344, 347 (7th Cir. 1991).

The first four grievance forms that Mr. Thomas submitted, including the Step 4 form directed to Superintendent Knight, address the harassing behavior of, and Mr. Thomas's problems and conflicts with, Officer James. Mr. Thomas was advised at Step 2 that a request to be separated from Officer James would have to be communicated to his counselor; Mr. Thomas hasn't alleged or argued that he contacted his counselor with such a request or that Superintendent Knight in some way impeded his ability to do so. Mr. Thomas didn't file grievances related to the attacks of which he complains, and only notified prison officials of the attacks in his Step 5 appeal, a document that was submitted long after the attacks and directed to the Regional Director, not to Superintendent Knight.

"It is not enough . . . that the [prison official] ought to have recognized the risk." Riccardo v. Rausch, 375 F.3d 521, 526 (7th Cir. 2004). The court must ask whether, before the actual occurrence, the risk that such injury would result was 'substantial' and whether the officials knew of the risk. Mr. Thomas must present evidence that Superintendent Knight "actually knew of a substantial risk of serious harm and consciously disregarded it nonetheless." Pierson v. Hartley, 391 F.3d 898, 902 (7th Cir. 2004). He hasn't done so. *See* Doe v. Welborn, 110 F.3d 520, 273 (7th Cir. 1997) ("An allegation that prison officials exposed a prisoner to a 'risk of violence at the hands of other inmates,' does not

6

implicate the Eighth Amendment's Cruel and Unusual Punishment Clause."). Superintendent Knight is entitled to summary judgment on Mr. Thomas's claim of deliberate indifference and failure to protect.

For the foregoing reasons, the court GRANTS the summary judgment motion of defendant Stanley Knight [Docket Nos. 43 and 47]. The Clerk is directed to enter judgment accordingly.

SO ORDERED.

ENTERED:   August 1, 2005

  /s/ Robert L. Miller, Jr.
Chief Judge
United States District Court